UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON AMICO,<br><br>            Plaintiff,<br><br>    v.<br><br>IDALBERTO ZALDIVAR-GALVES,<br><br>            Defendant. | No.  1:22-cv-01499-SAB (PC)<br><br>ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN A DISTRICT JUDGE TO THIS ACTION<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BE GRANTED<br><br>(ECF No. 36) |

Plaintiff Jason Amico is proceeding pro se and in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendant's motion for summary judgment, filed September 30, 2024.

**I.**

**BACKGROUND**

This action is proceeding against Defendant Dr. Zaldivar-Galves for deliberate indifference to a serious medical need.

Defendant filed an answer to the complaint on August 21, 2023.  (ECF No. 26.)  The Court issued the discovery and scheduling order on September 21, 2023.  (ECF No. 30.)  After receiving an extension of time to file a dispositive motion, Defendant filed a motion for summary

judgment on September 30, 2024, along with a request to seal exhibits attached to the motion. (ECF Nos. 35, 36.)  Plaintiff filed an opposition to Defendant's motion for summary judgment on October 22, 2024, and Defendant filed a reply on November 5, 2024.  (ECF Nos. 38, 39.)

On November 7, 2024, the Court granted Defendant's request to seal Exhibits 9-14 of the Declaration of Alexandria Faura, Exhibits A-F of the Declaration of I. Zaldivar-Galves, and Exhibits A-B of the Declaration of J. Liang in support of Defendant's motion for summary judgment.  (ECF No. 37.)

## II.

## LEGAL STANDARD

### A.   Summary Judgment Standard

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may consider other materials in the record not cited to by the parties, but it is not required to do so.  Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation

omitted).

In arriving at these Findings and Recommendations, the Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

### III.

### DISCUSSION

#### A. Summary of Plaintiff's Complaint

Defendant Doctor Zaldivar-Galves has been Plaintiff's primary care physician for approximately 16 months. Doctor Zaldivar-Galves was aware that Plaintiff was in severe eye pain in both eyes and aware of the serious medical risks by ignoring, denying, and/or delaying medical treatment. Defendant reviewed Plaintiff's medical records and possessed general knowledge of Plaintiff's medical history. Defendant knew of the risk of injury to Plaintiff's eye because Plaintiff continually informed him of the pain and request to see an ophthalmologist. Doctor Zaldivar-Galves ignored Plaintiff's complaints and the lack of treatment caused Plaintiff's condition to worsen which resulted in continual pain in both eyes.

#### B. Statement of Undisputed Facts[1]

1. At all relevant times, Plaintiff was in the custody of the California Department of the California Department of Corrections and Rehabilitation (CDCR) at Substance Abuse Treatment Facility and State Prison (SATF). (Declaration of Alexandra Faura (Faura Decl.) Ex. 1, Pl. Dep. at 15:20-22.)

2. Defendant Zaldivar-Galves is a medical doctor, employed by CDCR as a medical doctor at SATF, and was Plaintiff's primary care physician at all relevant times. (Declaration of I. Zaldivar-Galves (Zaldivar-Galves Decl.) ¶¶ 2, 5.)

///

---

[1] Hereinafter referred to as "UF."

3

3. Dr. Zaldivar-Galves was first assigned to be Plaintiff's primary care physician beginning in July 2022.  (Zaldivar-Galves Decl. ¶ 5.)

4. On July 4, 2022, Plaintiff submitted a CDCR 7362 Health Care Request Form ("CDCR 7362 form"), requesting to see nursing staff regarding "some headaches [he's] been having."  (Faura Decl. Ex. 3.)

5. On July 6, 2022, Plaintiff was seen by nursing staff regarding his CDCR 7362 form. During this appointment, Plaintiff reported that pain medication was not effective and requested an MRI. Following a physical examination by the nurse, Plaintiff did not present with any other symptoms other than a headache.  (Faura Decl. Ex. 9.)

6. During this appointment, nursing staff referred Plaintiff to his primary care physician for a follow-up appointment.  (Faura Decl. Ex. 9.)

7. On July 20, 2022, Dr. Zaldivar-Galves requested an order for a brain MRI without contrast for Plaintiff.  (Zaldivar-Galves Decl. ¶ 7, Ex. A.)

8. Plaintiff submitted a CDCR 7362 form, dated July 25, 2022 requesting to see an ophthalmologist to "get a clear vision of everything going on in [his] eyes."  (Faura Decl. Ex. 4.)

9. On July 25, 2022, Dr. Zaldivar-Galves ordered Plaintiff a referral to an optometry consultation, as routine priority.  (Zaldivar-Galves Decl. ¶ 7, Ex. A.)

10. On August 19, 2022, Dr. Zaldivar-Galves saw Plaintiff for a follow-up medical appointment for evaluation of headache.  (Zaldivar-Galves Decl. ¶ 8, Ex. B.)

11. At the August 19, 2022 appointment, Dr. Zaldivar-Galves offered Plaintiff a referral to an optometrist "for a possible visual disturbance" that could be the cause of the headache, but Plaintiff declined the consult.  (Zaldivar-Galves Decl. ¶ 8, Ex. B.)

12. At the August 19, 2022 appointment, Dr. Zaldivar-Galves indicated that based on Plaintiff's symptoms "no intervention was needed for now" and recommended Plaintiff continued use of nonsteroidal anti-inflammatory drugs (NSAIDs) for pain, as needed.  (Zaldivar-Galves Decl. ¶ 8, Ex. B.)

13. Plaintiff submitted a CDCR 7362 Health Care Request Form, dated September 4, 2022, stating he was "having severe eye pain."  (Faura Decl. Ex. 5.)

14. On September 8, 2022, Plaintiff was seen by a registered nurse and requested to "to know if MRI of brain and optometry consult was ordered." (Zaldivar-Galves Decl. ¶ 9; Faura Decl. Ex. 10.)

15. During this appointment, Plaintiff was notified the optometry and MRI consults were ordered on July 25, 2022. (Zaldivar-Galves Decl. ¶ 9; Faura Decl. Ex. 10.)

16. Plaintiff submitted a CDCR 7362, dated September 23, 2022, stating that he had been "having continuing pain in each of [his] eyes." (Faura Decl. Ex. 6.)

17. On September 23, 2022, Plaintiff was seen by a registered nurse and inquired "about MRI and optometry app[ointment]." (Faura Decl. Ex. 11.)

18. At the September 23, 2022 appointment Plaintiff reported that his eye pain was intermittent or it "comes and goes." (Faura Decl. Ex. 11.)

19. During the September 23, 2022 appointment Plaintiff was notified it could take up to ninety days for his MRI and optometry appointments to be scheduled. Plaintiff testified during deposition that he was told it could take up to ninety days for his MRI and optometry appointments to be scheduled. Faura Decl. Ex. 1, Pl.'s Dep. at 59:10-17.)

20. Plaintiff reported presently being in pain during the September 23, 2022 appointment. (Zaldivar-Galves Decl. ¶ 9.)

21. On September 26, 2022, Dr. Zaldivar-Galves ordered a refill of 650 mg of acetaminophen for Plaintiff's eye pain. (Zaldivar-Galves Decl. ¶ 9, Ex. C.)

22. The dosage of 650 mg of acetaminophen is currently the highest single-tablet dosage available per CCHCS to prescribe before prescribing narcotic painkillers, which are controlled substances. (Zaldivar-Galves Decl. ¶ 9.)

23. On October 18, 2022, Plaintiff was seen by Dr. Liang, an optometrist at SATF. (Declaration of J. Liang (Liang Decl.) ¶ 5.)

24. During this appointment, Plaintiff complained of irritation in his eyes, specifically the feeling of a foreign body stuck in his eye. (Liang Decl. ¶ 7, Ex. A.)

25. Dr. Liang also performed a corneal stain test to determine whether Plaintiff had signs of corneal damage and found no damage to Plaintiff's cornea. (Liang Decl. ¶ 7; Ex. A.)

5

26. Dr. Liang observed slight conjunctival injection, or "blood shot eyes" in Plaintiff's right eye.  (Liang Decl. ¶ 7; Ex. A.)

27. Dr. Liang diagnosed Plaintiff with an ocular allergy and dry eye.  (Liang Decl. ¶ 7; Ex. A.)

28. Dr. Liang prescribed Ketotifen and artificial tears.  (Liang Decl. ¶ 7; Ex. A.)

29. On October 19, 2022, Dr. Zaldivar-Galves submitted an order for the Ketotifen and artificial tears and reviewed Dr. Liang's notes from the optometry consultation.  (Zaldivar-Galves Decl. ¶ 11, Ex. D.)

30. On November 1, 2022, Plaintiff was seen by Dr. Zaldivar-Galves for a follow-up appointment.  (Zaldivar-Galves Decl. ¶ 12, Ex. E.)

31. On November 8, 2022, Plaintiff underwent a brain MRI without contrast.  (Faura Decl. Ex. 14.)

32. The brain MRI results were normal.  (Faura Decl. Ex. 14.)

33. Plaintiff submitted a CDCR 7362 dated December 24, 2022 indicating he was "having loss of vision in [his] left eye."  (Faura Decl. Ex. 7.)

34. Plaintiff was seen by Dr. Zaldivar-Galves on December 27, 2022, for a follow-up appointment in relation to the December 24 CDCR 7362 form.  (Zaldivar-Galves Decl. ¶ 14; Faura Decl. Ex. 12.)

35. During the December 27 appointment, Plaintiff reported he did "not want to be referred to optometry, and just wants it documented in his file that his vision has decreased." Plaintiff "refused to elaborate why he did not want the optometry referral or referral to be seen by the doctor."  (Zaldivar-Galves Decl. ¶ 14; Faura Decl. Ex. 12.)

36. During this appointment, a visual acuity test was performed, and Plaintiff's left eye was measuring at 20/100, his right eye at 20/40, but both eyes at 20/30.  (Zaldivar-Galves Decl. ¶ 14; Faura Decl. Ex. 12.)

37. Following this appointment, Dr. Zaldivar-Galves referred Plaintiff for a subsequent optometry consult and told Plaintiff to contact him if the condition did not improve.  (Zaldivar-Galves Decl. ¶ 14, Ex. F.)

1  38. On January 10, 2023, Plaintiff was seen by Dr. Zaldivar-Galves. (Zaldivar-Galves
2  Decl. ¶ 15; Faura Decl. Ex. 13.)
3  39. On January 10, 2023, Plaintiff's prescriptions for Ketotifen and artificial tears
4  were refilled. (Zaldivar-Galves Decl. ¶ 15.)
5  40. On February 22, 2023, Plaintiff was seen by Dr. Liang, the optometrist, for a
6  follow-up appointment. (Liang Decl. ¶ 8, Ex. B.)
7  41. During the February 22 appointment, Plaintiff's eyes were examined, and Dr.
8  Liang diagnosed Plaintiff with 20/20 vision and extremely mild farsightedness in both eyes.
9  (Liang Decl. ¶ 8, Ex. B.)
10 42. Dr. Liang indicated that Plaintiff could opt to receive prescription glasses, but due
11 to how mild his farsightedness was the prescription was not required. (Liang Decl. ¶ 8, Ex. B.)
12 43. On February 22, 2023, Dr. Liang ordered Plaintiff new glasses, per his request.
13 (Liang Decl. ¶ 8, Ex. B.)
14 44. Plaintiff testified that he disagreed with the course of treatment that the optometrist
15 Dr. Liang prescribed for him. (Faura Decl. Ex. 1, Pl.'s Dep. at 15:20-22).
16 45. Plaintiff testified during his deposition that Dr. Zaldivar-Galves ordering a brain
17 MRI and requesting an optometry consult was insufficient treatment for his eye pain. (Faura
18 Decl. Ex. 1, Pl.'s Dep. at 74:24-75:04).

## III.

## DISCUSSION

### A. Deliberate Indifference to Serious Medical Need

Plaintiff alleges that Dr. Zaldivar-Galves denied Plaintiff access to medical care and treatment for his eye pain for sixteen months. (ECF No. 11 at 6.) Plaintiff contends Dr. Zaldivar-Galves was aware of Plaintiff's eye pain but refused to treat him. (Id. at 7.)

Defendant argues he is entitled to judgment as a matter of law because he was not deliberately indifferent to Plaintiff's medical needs.

Under 42 U.S.C. § 1983, to maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show "deliberate indifference to serious medical needs."

7

Estelle v. Gamble, 429 U.S. 97, 104 (1976).  In the Ninth Circuit, the test for deliberate indifference consists of two parts. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations omitted). First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Id. (internal citations and quotations omitted.)  Second the plaintiff must show that the defendant's response to the need was deliberately indifferent. Id. The second prong is satisfied by showing "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Id.  Indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Id. (internal citations omitted).  However, an inadvertent or negligent failure to provide adequate medical care alone does not state a claim under § 1983. Id.

"A difference of opinion between a physician and the prisoner – or between medical professionals – concerning what medical care is appropriate does not amount to deliberate indifference." Snow v. McDaniel, 681 F.3d 978, 987 (9th Cir. 2012) (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122-23 (9th Cir. 2012) (citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986). Rather, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." Snow, 681 F.3d at 988 (citing Jackson, 90 F.3d at 332) (internal quotation marks omitted).). In addition, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106; Snow, 681 F.3d at 987-88, overruled in part on other grounds, Peralta, 744 F.3d at 1082-83; Wilhelm, 680 F.3d at 1122.

        1.     Serious Medical Need

Defendant does not explicitly dispute that Plaintiff was experiencing a serious medical need during the time he was Plaintiff's primary care physician from July 2022 to January 2023. The Court thus assumes for purposes of this motion that Plaintiff presented with a serious

medical need during the relevant time.

        2.        <u>Deliberate Indifference to Medical Need</u>

Here, it is undisputed that Dr. Zaldivar-Galves saw Plaintiff on July 20, 2022, August 19, 2022, November 1, 2022, December 27, 2022, and January 10, 2023. (UF 7, 10-12, 30, 34-36, 38.) During the first examinations in July and August, Dr. Zaldivar-Galves ordered an MRI imaging and a referral to an optometrist—despite Plaintiff's declination, and recommended that Plaintiff continue with use of NSAIDs for any pain. (UF 7, 11-12.) Plaintiff was seen at the Treatment and Triage Area (TTA) on September 23, 2022, at expressed experiencing pain in his eyes. (UF 16-20.) On September 26, 2022, Dr. Zaldivar-Galves ordered a refill of 650 mg of acetaminophen for Plaintiff's eye pain. (UF 21.) The dosage of 650 mg of acetaminophen is currently the highest single-tablet dosage available per CCHCS to prescribe before prescribing narcotic painkillers, which are controlled substances. (UF 22.) Plaintiff was seen by Dr. Liang, the optometrist, on October 18, 2022, and complained of irritation in his eyes, specifically the feeling of a foreign body stuck in his eye. (UF 23-24.) Dr. Liang also performed a corneal stain test to determine whether Plaintiff had signs of corneal damage and found no damage to Plaintiff's cornea. (UF 25.) Dr. Liang observed slight conjunctival injection, or "blood shot eyes" in Plaintiff's right eye. (UF 26.) Dr. Liang diagnosed Plaintiff with an ocular allergy and dry eye. (UF 27.) Dr. Liang prescribed Ketotifen and artificial tears. (UF 28.) On October 19, 2022, Dr. Zaldivar-Galves submitted an order for the Ketotifen and artificial tears and reviewed Dr. Liang's notes from the optometry consultation. (UF 29.) On November 8, 2022, Plaintiff underwent a brain MRI without contrast. (UF 31.) The brain MRI results were normal. (UF 32.)

Based on the undisputed evidence, Dr. Zaldivar-Galves has met his initial burden of proof in demonstrating that he was not deliberately indifferent to Plaintiff as he assessed and provided repeated medical care from his initial assignment as Plaintiff's primary care physician. The burden now shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." <u>In re Oracle Corp. Sec. Litig.</u>, 627 F.3d 376, 387 (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)). The non-moving party must "show more than the mere existence of a scintilla of evidence." <u>Id.</u> (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986)).

   In his opposition, Plaintiff attempts to create genuine issues of material fact by asserting that Dr. Zaldivar-Galves falsified his medical records, claiming Plaintiff did not deny vision problems, and did not deny pain, headaches or eye symptoms. However, Plaintiff fails to submit evidence to substantiate each allegation. Conclusory and speculative allegations, without any evidentiary support, are insufficient to raise a genuine issue of fact. FTC v. Publ'g Clearing House, Inc., 104 F.3d 1168, 1171 (9th Cir. 1997) (as amended) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact."). Plaintiff presents no evidence that Dr. Zaldivar-Galvez did not see Plaintiff as reflected in his treatment notes, or that he did not pursue the course of treatment reflected in the records. In fact, Plaintiff acknowledges that he was seen by Dr. Zaldavir-Galves at each of the appointments indicated in the medical records, Plaintiff received referral to an optometrist and for an MRI, and received his prescription for pain medication and eye drops. (ECF No. 38 at 3-4.) Plaintiff must present competent admissible evidence demonstrating that the doctor's progress notes are false in material respects as related to the elements of his Eighth Amendment claim. Plaintiff, however, does not offer any evidence to support his claims that his medical records were falsified or that Dr. Zaldavir-Galves did not correctly document Plaintiff's symptoms. Plaintiff's unsupported and conclusory arguments do not create a material issue of fact and are insufficient to defeat summary judgment. See Soremekun, 509 F.3d at 984; Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 922 (9th Cir. 2001); see also Fed. R. Civ. P. 56(c)(2). In addition, the Court is not required to accept Plaintiff's self-serving statements where they are contradicted by the doctor's medical records, as well as the medical records of other medical staff and specialists, and test results. See Toscano v. Embree, No. C 05-4113 SI (pr), 2007 WL 2753366, at *5 (N.D. Cal. Sept. 19, 2007) (noting a plaintiff cannot create a triable issue of fact by simply misrepresenting the contents of a document).

   Plaintiff further asserts that Dr. Zaldivar-Galves delayed his referral to an optometrist because it was scheduled for routine priority, despite knowledge of Plaintiff's alleged loss of vision. However, even if Dr. Zaldavir-Galves should have ordered the optometry consult or MRI sooner, Plaintiff has presented no evidence of any harm by the alleged delay in care. Hallett v.

1  Morgan, 296 F.3d 732, 746 (9th Cir. 2008); Shapley v. Nevada Board of State Prison Comm'rs,
2  766 F.2d 404, 407 (9th Cir.1985) (when a claim alleges only a delay in care, a prisoner cannot
3  make a claim for deliberate medical indifference unless the delay was harmful); Wood v.
4  Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990) (a delay in treatment must have caused
5  "substantial harm" in order to "constitute an eighth amendment violation").  Plaintiff contends
6  that Dr. Zaldivar-Galves made a routine referral to an optometrist on August 19, 2022, which was
7  not fulfilled until October 28, 2022, and Plaintiff knew he was losing vision in both his eyes.
8  (ECF No. 38 at 13.)  Although Plaintiff contends that on November 1, 2022, he did not deny any
9  headache or eye symptoms, it is undisputed that Dr. Zaldavir-Galves had previously referred
10 Plaintiff to an optometrist and immediately referred Plaintiff for second optometry consult on
11 December 27, 2022.  (UF 37.)  Plaintiff had a follow-up appointment with Dr. Zaldivar-Galves a
12 few weeks after the December appointment, and his prescriptions for Ketotifen and artificial tears
13 were refilled.  (UF 39.)  Then, on February 22, 2023, Plaintiff was seen by Dr. Liang, the
14 optometrist, for a follow-up.  (UF 40.)  During the February 22 appointment, Plaintiff's eyes were
15 examined, and Dr. Liang diagnosed Plaintiff with 20/20 vision and extremely mild farsightedness
16 in both eyes.  (UF 41.)  Dr. Liang indicated that Plaintiff could opt to receive prescription glasses,
17 but due to how mild his farsightedness was the prescription was not required.  (UF 42.) Dr. Liang
18 ordered Plaintiff new glasses, per his request.  (UF 43.)  Thus, it is undisputed that Dr. Liang's
19 examination in February 2023 revealed that Plaintiff's vision was essentially normal with some
20 mild farsightedness, which did not require the use of prescription lenses.  Plaintiff presents no
21 medical evidence that any change in the one-and-a-half month period preceding this appointment
22 would have changed this determination; nor is there any evidence that Plaintiff suffered any
23 adverse medical effects to his eyes.  In addition, Plaintiff complains about the lack of a referral to
24 an "eye specialist" but fails to explain or present evidence to demonstrate how a referral to an
25 optometrist does not meet such request or was inappropriate.  (ECF No. 38 at 10.)
26      While Plaintiff may have disagreed with Dr. Zaldivar-Galves course of treatment, a mere
27 difference of opinion regarding medical treatment does not amount to deliberate indifference.
28 Snow, 681 F.3d at 987.  Plaintiff has not presented any medical evidence that the diagnoses of

ocular allergies and prescriptions of acetaminophen, ketotifen, and artificial tears were medically unacceptable and chosen in conscious disregard of an excessive risk to Plaintiff's health.  Indeed, Plaintiff acknowledges that Dr. Liang diagnosed him with dry eyes and an ocular allergy and there were no major changes to his eyesight.  (ECF No. 38 at 4-5.)  Accordingly, Plaintiff has not established that Dr. Zaldivar-Galves acted with deliberate indifference under the Eighth Amendment and summary judgment should be granted.

### B.     Qualified Immunity

Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In general, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).  In ruling upon the issue of qualified immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right. See Saucier v. Katz, 533 U.S. 194, 201 (2001).  If a violation can be made out, the next step is to ask whether the right was clearly established. Id. This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition ...." Id. "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 202 (citation omitted). Thus, the final step in the analysis is to determine whether a reasonable officer in similar circumstances would have thought his conduct violated the alleged right. Id. at 205.

When identifying the right allegedly violated, the court must define the right more narrowly than the constitutional provision guaranteeing the right, but more broadly than the factual circumstances surrounding the alleged violation. See Kelly v. Borg, 60 F.3d 664, 667 (9th Cir. 1995).  For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand [that] what [the official] is doing violates the right." See Anderson v. Creighton, 483 U.S. 635, 640 (1987). Ordinarily, once the court

1  concludes that a right was clearly established, an officer is not entitled to qualified immunity
2  because a reasonably competent public official is charged with knowing the law governing his
3  conduct. See Harlow, 457 U.S. at 818-19. However, even if the plaintiff has alleged a violation of
4  a clearly established right, the government official is entitled to qualified immunity if he could
5  have "... reasonably but mistakenly believed that his ... conduct did not violate the right." Jackson
6  v. City of Bremerton, 268 F.3d 646, 651 (9th Cir. 2001); see also Saucier, 533 U.S. at 205.

Qualified immunity shields government officials who, in the face of clearly established law, acted reasonably but nonetheless violated some constitutional right.  Here, Dr. Zaldivar-Galves treated Plaintiff on a continuous basis, ordered radiological imaging, referred him to specialists, and prescribed medications to treat his symptoms and conditions. The undisputed evidence shows the Defendants did not violate Plaintiff's rights.  Therefore, qualified immunity is not applicable.  However, even if the Court concluded that Defendant did violate a clearly established right, Defendant would be entitled to qualified immunity because the evidence shows that Defendant Dr. Zaldivar-Galves acted reasonably by appropriately treating Plaintiff's vision concerns.

## IV.

## ORDER AND RECOMMENDATION

Based on the foregoing, it is HEREBY ORDERED that the Clerk of Court shall randomly assign a District Judge to this order.

Further, it is HEREBY RECOMMENDED that Defendant's motion for summary judgment filed on September 30, 2024, (ECF No. 26), should be granted and judgment should be entered in favor of Defendant Dr. Zaldivar-Galves.

This Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **twenty-one (21) days** after being served with this Findings and Recommendation, the parties may file written objections with the Court, limited to 15 pages in length, including exhibits.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights

on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **December 18, 2024**

STANLEY A. BOONE
United States Magistrate Judge